## Case No. 12,078.

### ROSS v. PRENTISS.

[4 McLean, 106.] 1

Circuit Court, D. Illinois. June Term, 1846.

PLEADING IN EQUITY—BILL OF REVIEW—DEEDS—RECORDING—EFFECT OF—WHO ARE CREDITORS.

1. A bill of review will lie for errors in law, or on the ground of newly discovered evidence.

2. On the latter ground, the bill is filed by leave of the court. On the former, it is filed without leave.

1 [Reported by Hon. John McLean, Circuit Justice.]

3. In Illinois, a deed takes effect from the time it is filed for record; and all conveyances are void against creditors, which are not so filed.

4. The United States are creditors within the law, against a delinquent postmaster and his sureties, against whom a judgment has been entered.

5. On this ground the conveyance of property, the deed not having been left for record, until after the defalcation occurred, was declared void.

[This was a bill in equity by Hugh Ross, administrator of Hiram Pratt, against William Prentiss, marshal.]

Mr. McDougal, for complainant.
Mr. Butterfield, for defendant.

McLEAN, Circuit Justice. This bill is brought to review a decree lately pronounced in this court. On the 6th of June, 1838, the United States obtained a judgment in this court for six hundred dollars damages and costs, against John S. C. Hagan and Gholson Kercheval, upon the official bond of the said Hagan, as postmaster at Chicago. An execution was issued on the judgment, upon which Prentiss, the marshal, levied upon a lot of ground in Chicago. And the complainant filed a bill in this court for an injunction, to restrain the marshal from selling the property. An injunction was granted, which, on the final hearing, was dissolved, and the bill dismissed at the costs of the complainant.2

It is the object of this bill to review and reverse the above decree for errors apparent upon its face. There are two grounds upon which a bill of review may be filed. One for errors in law, the other for errors in fact, founded upon newly discovered evidence. The latter can only be filed with the leave of the court. The former is filed without leave. In England, on a bill of review, the court look only at the decree which embodies the facts, and those facts can not be controverted; but in this country, the decree, generally, by reference to the proof, makes the facts a part of the decree, and they are examinable, as to questions of law arising thereon.

There is a demurrer to this bill of review, which brings before us the questions of law only, which arise upon the statements in the bill. It appears that in April, 1836, G. S. Hubbard purchased from Kercheval the lot levied on, for ten thousand dollars, one-half of which was alleged to have been paid at the time of the purchase, and the residue was paid within the year. That he took immediate possession, which he and his mortgagor have held ever since. That the legal title remained in Kercheval until the 25th September, 1837, when, at the request of Hubbard, he conveyed the lot to Daniel S.

2 [An appeal from the decree dismissing the bill at the costs of the complainant was taken to the supreme court, where it was dismissed on the ground that the amount in dispute was below $2,000. 3 How. (44 U. S.) 771.]

Griswold. That on the 1st of November, 1838, Griswold conveyed the same to Hubbard. Both of the above deeds were recorded on the 20th of April, 1839. On the 30th of April, 1839, Kercheval conveyed the same lot to G. S. Hubbard, which deed was recorded the 11th of April, 1839. On the 29th of August, 1838, Hubbard mortgaged the lot to Pratt, to secure the payment of $12,075.39. This mortgage was recorded the 30th of September, 1838. Gholson Kercheval became one of the securities of Hagan, as postmaster, on the 28th of November, 1832. That at the time of the pretended purchase of the lot by Hubbard, Hagan, as principal, and Kercheval, as security, were indebted to the United States on said official bond the sum of $2,357.51, and a judgment was recovered, as above stated, against them, on the bond, the 6th of June, 1838. That the United States, from the above, were the creditors of Hagan and Kercheval. By the act of January 31st, 1827, all conveyances of real estate are required to be recorded within twelve months. And by the act of January 18th, 1833, after the 1st of August, 1833, all deeds and title papers shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors, and subsequent purchasers without notice. And all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until they shall be filed for record.

From the above facts it appears that on the 6th of June, 1838, a judgment was obtained by the United States against Hagan and Kercheval, for a debt due in April, 1836. That Kercheval gave no deed, that was recorded, until the 20th of April, 1839. The judgment was entered not only before any deed for the lot from Kercheval was recorded, but before the mortgage from Hubbard to Pratt was executed. The note, secured by the mortgage, was dated 29th August, 1838. The above act, which declares deeds void, as to creditors, where the deed has not been left for record, was in full force; and it would seem must apply to the United States, who were creditors within the meaning of the act. Notice does not apply to creditors, but to purchasers only. The case of Robinson v. Rowan, 2 Scam. 499, seems to decide this question. When Hubbard executed the mortgage, he had no legal title. Independently of the statute, there would seem to be a strong presumption of fraud, in the conveyance of this property; from the circumstances in which the parties were placed, and the manner in which the several deeds were executed. From the facts, the inference is justified that the object was to place the property beyond the reach of the government. Why were the deeds so long withheld from record, if the transaction was a fair and open one? Why was the conveyance made by Kercheval to Griswold,

at the request of Hubbard, and who afterward conveyed to Hubbard? But it is unnecessary to place the conveyance on the general ground of fraud. We think it is within the statute, and that makes the deed fraudulent against the United States.

In looking into the decree sought to be reviewed and reversed by this bill of review, we see no error, but on the contrary think now, as we did when the decree was entered, that it is just, and sustainable upon the principles of a court of equity. This bill is therefore dismissed, at the costs of the complainant.